UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD D. KUHNS,

               Petitioner,

vs.                            Case No.  2:08-cv-163-FtM-29SPC

SECRETARY     DEPARTMENT     OF
CORRECTIONS;  ATTORNEY  GENERAL,
STATE OF FLORIDA,

               Respondents.

_____

## OPINION AND ORDER

Petitioner Richard D. Kuhns, Sr. (hereinafter "Kuhns" or "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #2, Petition) pursuant to 28 U.S.C. § 2254, on February 13, 2008[1] challenging his judgment of conviction entered October 24, 2002, by the Twentieth Judicial Circuit Court in Collier County, Florida for: Count I- battery;[2] Count II-

_____

[1]The Petition was filed in the United States District Court for the Northern District of Florida and transferred to this Court on February 25, 2008. See Doc. #1. The Court, however, applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[2]The Petition states that Petitioner was convicted of capital sexual battery. Petition at 1. Upon review of the record, Petitioner was convicted of the lesser included offense of battery in case number 01-1813-CFA. A review of the Florida Department of Corrections Inmate Population Detail indicates that Petitioner was subsequently convicted and sentenced on August 29, 2003, for sexual battery on a victim under the age of 12, inter alia, in Collier County case number 01-1812-CFA. This later judgment of conviction

(continued...)

lewd assault on a child under the age of 16 years; and, Count III-lewd act committed in the presence of a child.   Petition at 1.[3]
The Petition sets forth the following five grounds for relief:

Ground 1

Petitioner was denied his U.S. Constitutional rights against double jeopardy, to due process, a fair trial, and equal protection of law when the trial court denied Petitioner's motion for a statement of particulars, where the information charged a time frame of almost two years and testimony alleged the acts occurred both inside and outside the jurisdiction of the trial court.

Ground 2

Petitioner was denied his U.S. Constitutional rights to due process, a fair trial, and equal protection of law when the trial court allowed child hearsay statements made to the child's mother and to the child protection team worker to come into trial.

Ground 3

Petitioner was denied his U.S. Constitutional rights to cross-examine witnesses, due process, a fair trial, and equal protection of law when the trial court prohibited the defense from impeaching the credibility of the petitioner's ex-wife and her statements to the alleged child victim's mother.

Ground 4

Petitioner was denied his U.S. Constitutional rights to due process, a fair trial, and equal protection of law when the trial court denied Petitioner's motion for a new trial and for arrest of judgment because evidence of collateral crimes outside the court's jurisdiction [was] introduced and there is a reasonable probability the jury

_____

    [2](...continued)
is not before the Court at this time.

    [3]Unless, specified otherwise, the page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

found Petitioner guilty on the basis of committing those crimes.

Ground 5

Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel where counsel failed to properly object to child hearsay testimony.

Petition at 4-13.  The Respondent filed an amended Response (Doc. #20, Response) in opposition to the Petition and submitted supporting exhibits in paper format (Doc. #11), consisting of the record on direct appeal, the trial transcript, and the post-conviction pleadings.[4]  Petitioner filed a Reply (Doc. #24, Reply). This matter is ripe for review.

## I. Procedural History

On August 31, 2001, Kuhns was charged in a three-count Information as follows:

1. Between January 1, 1998 and December 31, 1999 in Collier County Florida, being eighteen years or older, did unlawfully commit a sexual battery upon T.L.,[5] a child less than 12 years of age, by putting the child's penis inside or in union with his mouth, contrary to Florida Statute 794.011(2)[;]

2. Between January 1, 1998 and September 30, 1999 in Collier County Florida, did unlawfully handle, fondle, or make an assault upon T.L., a child under the age of 16

_____

[4]The exhibits filed in paper format are contained in Appendices A-H.  Within each Appendix are exhibits.  The Court will refer to a particular document by the corresponding letter of the Appendix ("Appx. __") and number of the Exhibit ("Exh. __").

[5]Although identified in the Information and at trial, in an effort to protect the identify of th minor victim, the Court refers herein to the victim as "T.L.," instead of by victim's legal name.

years, in a lewd, lascivious or an indecent manner, by touching the child's penis with his hand, contrary to Florida Statute 800.04(1)[;]

3. Between January 1, 1998 and September 30, 1999 in Collier County Florida, did unlawfully and knowingly commit a lewd or lascivious act in the presence of T.L., a child under the age of 16 years, by exposing and masturbating his penis, contrary to Florida Statute 800.04(4).

Appx. A, Exh. 1 at 20-21.  On August 6, 2002, the State filed a "Notice of Intent to Introduce Child's Hearsay Statement" and "William's Rule Notice."[6]   Id. at 32-33, 34-35.  On August 27, 2002, Kuhns filed a "Motion for Statement of Particulars," "Motion to Exclude Child Hearsay Statement," and, "Motion to Exclude William's Rule Evidence."  Id. at 36-37, 38-40, 41-43.  On September 4, 2002, Kuhns filed a "Motion to Dismiss Counts II and III for Double Jeopardy."  Id. at 44-45.  On September 10, 2002, the court held a pretrial evidentiary hearing on the pending motions.  Id. at 46-48; Appx. F (transcript of hearing).  At the conclusion of the hearing, the court denied Kuhns' Motion to Exclude Child Hearsay and Motion for Particulars, and granted

---

[6]Williams v. State, 110 So. 2d 654 (Fla. 1959).  Under the Williams rule, evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character.  Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in Williams and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Buenoano v. State, 527 So. 2d 194, 197 (Fla. 1988).

Kuhns' Motion to Exclude Williams Rule Evidence as to victims M.S, J.S. and C.H.  Appx. A, Exh. 1, 48; Appx. F, 373-374, 392-396.  On September 11, 2002, prior to the start of trial, the court denied Kuhns' Motion to Dismiss Counts II and III for Double Jeopardy. Appx. G, 9.  On September 12, 2002, the jury returned a verdict finding Kuhns guilty on Count I of the lesser included offense of Battery; guilty on Count II as charged of Lewd and Lascivious Assault on a Child under 16; and, guilty on Count III of the lesser included offense of Committing an Unnatural and Lascivious Act. Appx. A, Exh. 2.

## A.  Motion for a New Trial

On September 18, 2002, Petitioner filed a Motion for New Trial and for Arrest of Judgment. Appx. A, Exh. 3.  Kuhns raised the following grounds in support:  1) the verdict on Counts I, II and III were against the greater weight of the evidence; 2) the trial court erred in denying Petitioner's pretrial motion for particulars; 3) the trial court erred in prohibiting cross examination of the victim's mother with regard to the potential bias of Petitioner's ex-wife; and; 4) the jury could have convicted Petitioner of alleged criminal activity occurring outside the territorial jurisdiction of the court, which constituted fundamental error because Defendant may have been convicted for crimes outside the court's jurisdiction and for which Petitioner was never charged.  Id.  On September 23, 2002, the trial court

entered an order denying Petitioner's Motion for New Trial and Arrest of Judgment.  Id., Exh. 4.  On October 24, 2002, the State court sentenced Petitioner to 84.5 months in prison, followed by seven years of probation.  Id., Exh. 5.[7]

## B.  Direct Appeal

On November 14, 2002, Kuhns filed a direct appeal.  Id., Exh. 6.  Kuhns raised the following four grounds on appeal:

1. Whether the trial court erred in denying Defendant's Motion for Statement of Particulars when the information charged a time frame of almost two years and testimony alleged the acts occurred both inside and outside of the jurisdiction of the court.

2. Whether the trial court erred in evaluating and admitting child hearsay statements made to the child's mother and to the child protection team worker, which did not include age appropriate language and should have been deemed unreliable.

3. Whether the trial court erred in limiting the Defendant's right to cross examine the witnesses against him when the court prohibited the defense counsel from impeaching the credibility of the Defendant's ex-wife and her statements to the child victim's mother.

4. Whether the trial court erred in denying the Defendant's Motion for a New Trial and for Arrest of Judgment because evidence of collateral crimes committed outside the court's jurisdiction were introduced and the jury could have found the Defendant guilty of committing those crimes.

---

[7]Petitioner was sentenced to 1 year on Count I, 84.5 months on Count II, and time served on Count III, the sentences to run concurrently.  Appx. B, Exh. 3.

Appx. B, Exh. 5.  The State filed an Answer Brief.  Appx. D, Exh. 1.  On September 26, 2003, the appellate court affirmed Petitioner's conviction and sentence without a written opinion. Kuhns v. State, 860 So. 2d 420 (Fla. 2nd DCA 2003); Appx. D, Exh. 2.

## C. Rule 3.850 Motion

Thereafter, on September 22, 2004, Petitioner, represented by counsel, filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising four grounds of ineffective assistance of counsel.  Appx. B, Exh. 1.  The State filed a response.  Id., Exh. 2.  The post-conviction court summarily denied Petitioner's third claim and granted Petitioner an evidentiary hearing on claims 1, 2, and 4.  Id., Exh. 3.  At the evidentiary hearing, Petitioner, represented by counsel, agreed to abandon claim 2, deemed claim 4 moot, and proceed only as to claim 1: that trial counsel was ineffective in failing to properly object to the sufficiency of the evidence used by the trial court in its determination of the reliability of the child hearsay statements that were admitted at trial.  Appx. C (transcript of January 3, 2006 evidentiary hearing).  On June 5, 2006, the post-conviction court denied Petitioner relief on this final claim for relief. Appx. B, Exh. 4.

Petitioner, represented by counsel, filed an appeal of the post-conviction court's June 5, 2006 order.  Appx. D, Exh. 4.  The

State filed an answer brief.  Id., Exh. 5.  On November 2, 2007, the appellate court affirmed the post-conviction court's June 5, 2006 order without opinion.  Kuhns v. State, 968 So. 2d 567 (Fla. 2nd DCA 2007); Id., Exh. 6.  The mandate issued on November 26, 2007.  Id., Exh. 7.  Petitioner then filed the instant timely[8] Petition raising the five grounds for relief set forth above.

## II.  Applicable § 2254 Law

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action.  Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001). Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts.  Alston v. Fla. Dep't of Corr., 610 F.3d 1318, 1325 (11th Cir. 2010)(citations omitted).  AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).  The following legal principles apply to this case.

---

[8]Respondent does not address the timeliness issue, but the Court has independently determined that, due to Petitioner's post-conviction filings, 353 days of untolled time ran on the federal limitations period, resulting in Petition being timely filed.

## A.   Only Federal Claims are Cognizable

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the grounds that the petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States.   28 U.S.C. § 2254(a).   A claimed violation of state law is insufficient to warrant review or relief by a federal court under § 2254.   Pulley v. Harris, 465 U.S. 37, 41 (1984)(stating "[a] federal court may not issue the writ on the basis of a perceived error of state law."); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)(stating "[t]oday, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Waddington v. Sarausad, 555 U.S. 179, 129 S. Ct. 823, 832 n.5 (2009)(same); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000)(stating that § 2254 was not enacted to enforce state-created rights).   Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)(finding claim involving pure question of state law does not raise issue of constitutional dimension for federal habeas corpus purposes; state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved).

**B.   Federal Claim Must Be Exhausted in State Court**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . . ."  28 U.S.C. § 2254(b)(1)(A).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.  <u>Rhines v. Weber</u>, 544 U.S. 269, 274 (2005).  "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.  That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  <u>Mason v. Allen</u>, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) and <u>Castile v. Peoples</u>, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.  A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion.  <u>Anderson v. Harless</u>, 459 U.S. 4, 7 (1983).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"  <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting

Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." Smith, 256 F.3d at 1138. A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

## C.  Deference to State Court Decision

A federal court must afford a high level of deference to the state court's decision. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to

a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Berghuis v. Thompkins, 130 S. Ct. 2250, 2259 (2010).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Blankenship v. Hall, 542 F.3d 1253, 1271 (11th Cir. 2008); Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).  When the last state court rendering judgment affirms without explanation, the Court presumes that it rests on the reasons given in the last reasoned decision.  Powell v. Allen, 602 F.3d 1263, 1268 n.2 (11th Cir. 2010)(citing Ylst v. Nunnemaker, 501 U.S. 797, 803-05 (1991)).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that

contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003). It is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedent if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable," a substantially higher threshold. <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010)(citing cases). Depending upon the legal principle at issue, there can be a range

of reasonable applications.  Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2).  A factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The Supreme Court has not yet decided whether a petitioner must establish only that a factual finding is unreasonable, or must also rebut the presumption.  Wood v. Allen, 130 S. Ct. 841, 848 (2010).  In any event, the statutory presumption of correctness "applies only to findings of fact made by the state court, not to mixed determinations of law and fact."  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001)(citation omitted).

## D.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether

a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. ___, 130 S. Ct. 13, 16 (2009). Thus, a habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayanze, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009)(citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003)). The Court need not address both components of the Strickland analysis, if the petitioner makes an insufficient showing on one. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)(noting that because both parts of the test must be satisfied to show a Sixth Amendment violation, the court need not address the performance prong if the defendant cannot meet he prejudice prong, or vice-versa).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted).   In demonstrating counsel's deficiency, it is the petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom., Jones v. Allen, 127 S. Ct. 619 (2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id.   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom., Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.   So, omissions are

inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  In finding prejudice, the court must determine that the result of the proceedings would have been different considering "the totality of the evidence before the judge or jury." Berghuis v. Thompkins, ___U.S. ___, 130 S. Ct. 2250, 2265 (2010)(quoting Strickland, 466 U.S. at 695).

### III. Analysis

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003).

### A.  Underlying Facts

The Court adopts the following facts as set forth in the State's brief on direct appeal, which accurately reflect the evidence presented in the state court:

> Appellant worked with, and became friends with the victim's father sometime in 1997.  At that time, the

victim, T.L., was approximately seven years old.  During the course of Appellant's relationship with the victim's father, Appellant began spending time alone with T.L. Beginning in early to mid 1999, T.L. began spending the weekends with Appellant at Appellant's home. In addition to spending the weekends at Appellant's house, Appellant took T.L. on a number of out-of-town trips. Specifically, Appellant took T.L. to Pinehurst, North Carolina; West Palm Beach, Florida; and Orlando, Florida for golf-related activities.

Around May 1999, Appellant and T.L.'s mother began arguing about, among other things, the amount of time Appellant was spending with T.L.  Thereafter, T.L.'s parents refused to allow T.L. to visit Appellant, and refused to allow T.L. to go on any other out-of-town trips with Appellant. Shortly thereafter, T.L.'s mother asked him if anything happened to him while he was staying with Appellant.   T.L. denied anything inappropriate occurred.

In March of 2001, T.L.'s mother received a phone call from Appellant's ex-wife.  T.L.'s mother testified she had never previously met or spoke with Appellant's ex-wife. T.L.'s mother testified that as a result of her conversation with Appellant's ex-wife, she asked T.L. if anything inappropriate happened during the time T.L. visited Appellant. At first, T.L. denied anything wrong happened.  The next day, T.L.'s mother again inquired about what happened when T.L. visited Appellant.  T.L. then admitted that Appellant "touched" him during his weekend visits.  T.L. further elaborated telling his mother that Appellant touched T.L.'s penis, put his mouth on T.L.'s penis, and masturbated in front of T.L.  As a result of T.L.'s disclosure, the police were called, T.L. was taken to a psychologist, and was interviewed by a Child Protection Team (CPT) member.

T.L., testified he met Appellant when T.L. was in first grade.  T.L. stated that sometime thereafter, he began visiting Appellant at Appellant's residence approximately "every other weekend."  T.L. testified the abuse occurred [p]retty much every time I went over his house" during the time period of 1998-1999, and until T.L.'s parents forbade T.L. from visiting Appellant sometime toward the middle or end of T.L.'s third-grade school year.  During the CPT interview, T.L. was able to identify what grades he was in, who his teachers were, and where he lived when

the abuse took place.  Further, T.L. was able to identify where Appellant lived, and what Appellant's house looked like during the relevant periods of time.  Among other things, T.L. testified at the hearing and/or stated during the CPT interview that ". . . what he did he played with my thing, with my private, and then he sometimes put it in his mouth."  T.L. also stated that "white stuff" came out of Appellant's penis when Appellant masturbated in front of T.L.  On August 6, 2002, the State noticed its intent to rely on the hearsay statements of T.L.'s mother, and T.L.'s CPT interview.

. . .

During his testimony, Appellant admitted that he met T.L. in the Spring of 1997, and that T.L. began spending the weekends at his house approximately six to eight months after they met.  Appellant further testified that his relationship with T.L. ended in May 1999.  Moreover, Appellant admitted that every time T.L. stayed at Appellant's house, Appellant was present.

In addition to T.L. and T.L.'s mother's testimony, Appellant's daughter, Cara Kuhns, testified at trial.[9] Cara testified she lived with her father during 1998-99. At some point during this time period she witnessed her father and T.L. playing a game called "blanket monster." Cara testified that Appellant wrapped himself and T.L. in a comforter.  Cara then heard T.L. state, "Rick, stop touching my wiener."  Although the court permitted Appellant to impeach Cara's testimony by establishing she was biased because she currently lived with her mother, Appellant's estranged ex-wife, and that her mother and father's relationship was "hostile," Appellant chose not to do so.

While Cara did not testify as to the nature of her parents' relationship, Appellant himself testified regarding the strained relationship he currently had with his ex-wife.

Appx. D, Exh. 1 at 1-5.[10]

---

[9]At the time of trial, Cara was 14 years old.

[10]References to the trial transcripts are removed and the letters T.L. are substituted for the child-victim's name.

**B.  Ground One**

Petitioner submits that his U.S. Constitutional rights against double jeopardy, to due process, a fair trial, and equal protection of law were violated when the trial court denied Petitioner's pre-trial motion for a statement of particulars.  Petition at 4-5.  In particular, Petitioner argues that the information charged a time frame of almost two years and the testimony alleged that the acts occurred both inside and outside the jurisdiction of the trial court.  Id.  Because the State was not required to narrow the time frame, Petitioner was not able to determine if he had an alibi for the charges filed in the Information.  Id. at 5.  Petitioner states that he raised this issue on direct appeal.  Id. at 4. Further, Petitioner avers that the State court "never held a hearing, nor did the trial court address the merits of the motion."  Id.

Respondent submits that Petitioner did not fairly present the constitutional dimension of Ground One to the State court on direct appeal, and thus the Ground is unexhausted and procedurally barred. See generally Response at 16-18.  Instead, on direct appeal Petitioner raised his claim in terms of Florida law only.  Id. Respondent notes that although Petitioner makes reference to his "due process" and "double jeopardy" rights, he fails to specify that these rights arise under the U.S. Constitution, as opposed to the Florida Constitution.  Id. at 17.  Respondent points out that the Florida Supreme Court case relied upon by Petitioner,

Dell'Orfano v. State, 616 So. 2d 33, 35 (Fla. 1993), discussed the
concept of due process in terms of Florida Constitution Article I
§ 9.  Id. at 18.   In the alternative, Respondent states that
Ground One does not present a federal issue for which habeas relief
lies because the State court's decision on this issue rested only
on State law grounds.   Id.   Finally, to the extent that
Petitioner's passing references to "due process" and "double
jeopardy" can be deemed sufficient to have exhausted the federal
dimension of this Ground, Respondent maintains that the Florida
court's decision on this Ground was not contrary to or an
unreasonable application of clearly established Federal law.   Id.

In Reply, Petitioner states that he "has more fully researched
this ground and in the interest of conserving judicial resources,
will not further argue this ground."  Reply at 2.  Thus, it appears
that Petitioner has withdrawn Ground 1 as relief in his Petition.

**(1) Abandonment/Failure to Exhaust in State Court:**

Based upon Petitioner's statement that he "will not further
argue this ground," the Court deems Ground One withdrawn.
Consequently, the Court dismisses Ground One.

To the extent that Petitioner does not intend to withdraw this
Ground from consideration by the Court, but intended to make no
further argument in reply to the Response, the Court dismisses
Ground One as unexhausted and procedurally barred.  Upon review of
the record, the Court finds that Petitioner did not fairly present

the federal dimension of Ground One as raised in the instant Petition to the State courts.    Instead, the claim was raised exclusively in terms of State law only, without referencing or substantively addressing federal law.  See generally Appx. B, Exh. 5.  None of the cases cited by Petitioner discuss the United States Constitution or apply federal law.  Further, Petitioner's passing reference to "due process" or "double jeopardy" without citation to federal law or discussion of the governing federal constitutional principles is not enough to fairly present his federal claim to the Florida courts.    Consequently, the Court agrees Ground One is unexhausted and procedurally barred.  See Harvey v. Dagger, 656 So. 2d 1253, 1256 (Fla. 1995)(holding that "issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack.").    Further, Petitioner does not demonstrate cause and actual prejudice, or that a fundamental miscarriage of justice would result, to overcome the procedural default of this claim.

**(2) No Violation of Federal Law:**

Even if the Court construes Petitioner's "due process" or "double jeopardy" arguments as sufficient to alert the State Court of the federal dimension of this claim, the Court finds Ground One is without merit.  Contrary to Petitioner's assertion, the trial court conducted a pretrial hearing on his Motion for a Statement of Particulars, and did explain the basis for the court's denial of

the Motion.   See Appx. F at 394-95.   The Court also denied Petitioner's Motion for New Trial, which asserted, *inter alia*, that the court erred in denying the Motion for a Statement of Particulars.  Appx. A, Exhs. 3, 4.

The Sixth Amendment guarantees an accused the right "to be informed of the nature and cause of the accusation."  The Supreme Court has identified two constitutional requirements for a charging document: that it (1) contain all the elements of the offense and fairly inform the defendant of the charges against which he must defend; and (2) enable the defendant to plead an acquittal or conviction that would bar future prosecutions for the same offense. United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007).  The granting of a statement of particulars in conjunction with satisfying this federal constitutional requirement is within the sound discretion of the trial court.  Wong Tai v. United States, 273 U.S. 77, 82 (1927).  The charging document in this case satisfied federal constitutional standards, the denial of a statement of particulars was not an abuse of discretion, and therefore no federal constitutional standard was violated.  Thus, Petitioner has failed to demonstrate that the State courts' rejection of this claim was contrary to, or an unreasonable application of clearly established federal law, or that the state court unreasonably determined the facts in light of the evidence presented.  Therefore, Petitioner is not entitled to federal habeas

relief on this claim.

Accordingly, the Court dismisses Ground One as abandoned, or, unexhausted and procedurally barred.  In the alternative, the Court denies Petitioner relief on Ground One on the merits.

## C.  Ground Two

In Ground Two, Petitioner alleges that he was denied his right to due process, a fair trial, and equal protection of law under the U.S. Constitution when the trial court allowed child hearsay statements made to the child's mother and to the child protection team worker into evidence at trial.  Petition at 4.  In support, Petitioner states that the trial court erred in admitting these child hearsay statements because the child's statements lacked reliability.  Specifically, Petitioner contends that the child's statements contained language that were not age appropriate, the statements were made only after "extensive questioning," and, were made "almost two years after the alleged abuse ceased." Id. at 6. Further, Petitioner claims that the trial court erred in permitting the videotaped interview of the child into evidence because these statements were "cumulative in nature" and were used "solely to bolster the credibility of the child's trial testimony." Id. at 7.

In response, Respondent submits that Ground Two was not raised in terms of federal law on direct appeal.  Response at 23. Instead, on direct appeal, Petitioner only argued that the trial court's ruling failed to comply with Florida Statute § 90.803(23),

which permits the admission of child hearsay in child sex abuse cases. Id. at 24. Further, Respondent argues that the decision whether to admit child hearsay under § 90.803(23) is purely an issue of State law. Id. In the alternative, Respondent argues that Petitioner does not cite to any federal law that the State court ruling contradicts, nor demonstrates that the State court ruling was objectively unreasonable under the circumstances. Id.

Petitioner argues that he "fairly presented" Ground Two in terms of federal law. Reply at 3-4. Petitioner points out that he relied upon Idaho v. Wright, 497 U.S. 805 (1990) in support of his claim. Id. at 3. Additionally, Petitioner argues that he relied upon the Florida Supreme Court's decision in State v. Townsend, 635 So. 2d 949 (Fla. 1994), "which employs United States Constitutional analysis of confrontation and due process rights" as well as other Florida case law that rely on federal case law. Id. at 3-4.

**(1) Failure to Exhaust in State Court:**

Upon review of the record, the Court finds that Petitioner did not present his claim concerning the admission of child hearsay and the introduction of the child's videotape to the State court in terms of a federal constitutional violation. On direct appeal, Petitioner only argued that, "while the court correctly conducted a hearing on the issue of the admissibility of the child hearsay statements, the court erred in deeming such statements to be

reliable." Appx. B, Exh. 5 at 32. Although Petitioner cited to Idaho v. Wright in his direct appeal brief, he relied on Idaho for the legal proposition that one of the factors that a state court should consider in assessing the reliability of the child hearsay is "what motivation the child may have to fabricate the allegation." Id. Similarly, Petitioner relied upon the Florida Supreme Court's decision in State v. Townsend only to support his argument that the child's statement lacked spontaneity and the trial court's "justification for the admissibility of [the child hearsay] was nothing more than the mere boilerplate recitation of the [Florida] statutory requirements." Id. at 33. Similarly, Petitioner cited only to Florida law in support of his contention that the videotape constituted cumulative evidence. Id. at 34.

Thus, it is clear that Petitioner was only challenging the trial court's findings that the child hearsay was reliable and that the videotape was cumulative. Petitioner never asserted a Fourteenth Amendment Due Process claim or a Sixth Amendment Confrontation Clause claim to the State court, as he now raises before this Court. Petitioner has not shown the required cause and prejudice, or a violation of fundamental fairness to excuse the procedural default. Consequently, the Court finds that the federal dimension of Ground Two is unexhausted and procedurally barred.

**(2) No Violation of Federal Law:**

In the alternative, the Court finds Ground Two is without merit. Petitioner requests that the Court conduct an evidentiary hearing on this issue and points to facts that he alleges supports his contention that the trial court erred in finding the child hearsay reliable. The Court finds that an evidentiary hearing would not be appropriate.

Federal habeas courts do not sit to review State evidentiary rulings unless the alleged error is of such a magnitude as to render the state defendant's trial fundamentally unfair. See Estelle v. McGuire, 502 U.S. 62, 71 (1991); Knight v. Singletary, 50 F.3d 1539, 1546 (11th Cir. 1995). Here, the State courts found no evidentiary error under Florida law. It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005)(internal quotation omitted). Further, this Court finds no error in the evidentiary determination by the state court judge, much less error which is of such a magnitude as to render the state defendant's trial fundamentally unfair.

Although peripherally raised by Petitioner, the Court finds neither a Confrontation Clause or a Due Process Clause violation. The Supreme Court has twice noted that it has not decided whether statements made to someone other than law enforcement personnel are

"testimonial" for purposes of the Confrontation Clause.  Michigan v. Bryant, Case No. 09-150, 2011 WL 676964 *9 n.3 (U.S. Feb. 28, 2011); Davis v. Washinton, 547 U.S. 813, 823 n.2 (2006). Therefore, the child's statements to his mother could not have violated any Supreme Court decision because the Supreme Court has not yet decided the issue.  Even if the child's statements during the interview with the CPT worker can be viewed as testimonial, the Court notes that T.L. testified and was subject to rigorous cross-examination by Petitioner's counsel.  See Appx. G at 187-199, and Appx. H at 203-204.  Thus, the Court finds no error under Crawford v. Washington, 541 U.S. 36, 59 (2004), or any other Supreme Court decision.

Accordingly, the Court dismisses Ground Two as unexhausted and procedurally barred.  In the alternative, the Court denies Petitioner relief on Ground Two on the merits.

**D.  Ground Three**

In Ground Three, Petitioner claims that his right to cross-examine witnesses, due process, a fair trial, and equal protection of law guaranteed by the U.S. Constitution were violated when the trial court prohibited the defense from impeaching the credibility of the Petitioner's ex-wife and her statements to the child victim's mother.  Petition at 8.  Petitioner claims that the trial court limited his ability to cross-examine witnesses, thereby preventing him from impeaching his ex-wife's credibility.  Id. at

9.  Petitioner explains that he wanted to demonstrate that his ex-wife, who had initiated a phone call to the victim's mother, was biased at the time because she and the Petitioner were involved in a custody fight when these allegations surfaced.  Id.

Respondent argues that Petitioner failed to alert the State court of the federal constitutional dimension of this claim. Response at 27.  Respondent submits that Petitioner only claimed that the trial court's ruling "limited the Defendant's constitutional right to cross-examine the witness," without specifying whether Petitioner was raising this claim under the U.S. Constitution or the Florida Constitution.  Id.

In Reply, Petitioner states that he fairly presented this issue to the State court on direct appeal by citing to Coco v. State, 62 So. 2d 892 (Fla. 1953), and by referring to his "constitutional right" of cross examination.  Reply at 10.[11]

**(1) Failure to Exhaust in State Court:**

Based upon the record, the Court finds that Petitioner fairly presented Ground Three to the State court in terms of a violation

---

[11]In his Reply, for the first time, Petitioner cites to three other instances where the trial judge limited examination.  Reply at 14-16.  In particular, Petitioner claims the trial court erred by limiting cross-examination of the Petitioner's daughter, limiting the direct examination of Petitioner, and preventing John and Lisa Wilkinson from testifying.  Id.  Petitioner did not raise these additional instances of trial court error in the instant Petition or on direct appeal, and the claims are unexhausted and procedurally barred.  Consequently, the Court will not discuss these additional instances.  Herring, 397 F.3d at 1342 (citations omitted).

of federal law.  While Petitioner's direct appeal fails to cite to federal law, the State clearly understood that Petitioner's claim presented a federal issue and responded to it as such, as evidenced by the State's brief in response to Petitioner's brief on direct appeal.  See Appx. D, Exh. 1.  Consequently, the Court deems Ground Three exhausted and will address the merits of this claim.

**(2) No Violation of Federal Law:**

The Court record shows that the trial court did not rule on any objections during defense counsel's cross-examination of the victim's mother concerning any questions about Petitioner's ex-wife.  See generally Appx. H at 218-27.  Indeed, throughout the entirety of the mother's cross-examination, there was only two objections made by the State, both concerning whether the victim was on Ritalin.  The trial court overruled both objections.  Id. at 21-220.  In questioning the child's mother about Petitioner's ex-wife, defense counsel only asked:

> Now, who else was present after the phone call from Cindy [Petitioner's ex-wife]?  Who was present when you asked T.L. whether - - I wasn't quite clear what you asked him, but whether he was touched inappropriately?  Was your husband there?

Id. at 222.  The State did not object to this question by Defense counsel.  See Id.  Thus, the record reflects that defense counsel did not attempt to cross-examine the victim's mother concerning Petitioner's ex-wife.

The record, however, reflects that on the day of trial, the trial court entered a ruling on the State's oral motion *in limine* that prohibited the defense from introducing hearsay evidence concerning allegations made by Petitioner's ex-wife. The following exchange occurred prior to the start of trial:

MR. MARASCA:
Judge, the other two witnesses that I propose today, Lisa Wilkinson and John Wilkinson. Now, they have known the Defendant for a period of time, that would include the offense dates that has been listed. My concern is I have a Motion in Limine in the sense that — well, there's two issues, one, somehow they spent a great deal of time telling me what a terrible person the Defendant's ex-wife is and all the allegations the ex-wife has made, allegations that the ex-wife and the ex-wife's daughter, the Defendant's daughter, not the one who testified yesterday, but an older daughter, indicated that their children, while being baby-sat by him, were sexually abused. These are hearsay witnesses. The ex-wife is not on the State's witness list. In fact, the ex-wife was in Court yesterday watching the hearings; she's not on the defense witness list. The older daughter is not on the witness list. My Motion in Limine is to prevent any hearsay testimony about any prior allegations made by a person who is not on anybody's witness list, and it's hearsay. And my concern is they're going to try to turn this into a divorce custody issue when this person isn't even on the State's witness list.

THE COURT:
So is it possible for them to testify about something that would be relevant to this case without getting into the allegations about the ex-wife and the Defendant's children?

MR. HOLLANDER:
Probably not, Judge, and here's where we're going. We believe that this entire situation is a creation of the ex-wife. She called person after person after person and didn't ask whether they had seen any signs or anything. She told them that my client was molesting their children. All right. My client has adamantly denied that all the way through to today. And I don't believe

-31-

it is hearsay.  Hearsay is defined as a statement coming
in for the truth of the matter asserted,

THE COURT:
So what would this be coming in for?

MR. HOLLANDER:
To show it was said?  Obviously not for the truth of the
matter asserted.

THE COURT:
But even if it came in for the limited purpose that it
was said, that's all.  I wouldn't allow testimony about
the hostility, the animosity, the calling, the who did
what first.  I mean, what is the purpose of that is what
I'm getting to.

MR. HOLLANDER:
What our position is that she calls up these parents,
gets them all stirred up, and then they create the
situation with the children or in this case T.L. and -

THE COURT:
How do you propose to get the fact in the wife made the
initial calls,  which we heard yesterday, which I think
we agree will come in that they received a call for the
wife?

MR. MARESCA:
But not into anything she said, because that's hearsay.

THE COURT:
Right.  So if we're all in agreement that it will be —
that it will be permitted for testimony, that the wife
did make the initiating call to the parents and then
everything followed suit, I don't know that anything
these people could testify to would be relevant. Do you
see what I'm saying? If the Court limits the information
so that the focus of this trial is not that — obviously
the jury is going to hear that the wife made the
initiating call, that doesn't change the allegations
necessarily.  And that's for the jury to determine,
whether the witnesses are credible, whether the State can
prove its case, and whether it was as a result of the
wife initiating the call or whether there's sufficient
evidence to support the charges.  So unless you can tell
me specifically what these people will do, at this point
I don't think I'm going to permit that because there's

already testimony that the wife made the initiating call.
Appx. G at 13-16.  The court, however, clarified that the defense
could impeach Cara Kuhns, the Petitioner's daughter, with the fact
that she was living with her mother, and that Petitioner and her
mother had a hostile relationship.  Id. at 17-18.  The trial court
thereafter confirmed that it was granting the State's motion *in
limine* with regards to the Wilkinsons' testimony about "the hostile
divorce situation and the setting up of these calls or the reason
that these suits have been filed . . ."  Id. at 19-20.

Additionally, the following exchange occurred during defense
counsel's opening statement:

> MR. HOLLANDER
> . . . And the first time it came up was when - - you've
> heard the story about hell hath no fury like a woman
> scorned, was when my client's ex-wife calls and tells
> them, your child - -
>
> MR. MARASCA:
> Judge, I'm going to object at this time.  May we
> approach?
>
> THE COURT:
> Yes.
>
> During Sidebar
>
> MR. MARASCA:
> Your Honor, he's going into hearsay that is not going to
> be in evidence.  He's going into - -
>
> MR. HOLLANDER:
> I expect it to be admitted into evidence.
>
> THE COURT:
> How?
>
> MR. HOLLANDER:

Because it's not for the truth of the matter asserted.

THE COURT:
A ruling has been made in that as far as that conversation did occur but the substance of the conversation.

MR. HOLLANDER:
Okay.  I'll back it up.

THE COURT:
Thank you.

Id. at 172, 172.  Finally, prior to the start of the defense's case, the court reminded defense counsel of the following:

Like I said, to the extent that you can say were you involved in a heated divorce and a contested this [sic], but that is not going to become the focus.  I mean, you can raise it sufficiently to show possible bias or motive, but I am not going to allow  it to become a feature.

Appx. H at 284.

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him."  This includes the right to cross-examine witnesses. See Pointer v. Texas, 380 U.S. 400, 406-07 (1965).  However, "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739 (1987)(quoting Delaware v. Fensterer,  474 U.S. 15, 20 (1985)).  The Confrontation Clause, however, does not limit the trial judge's ability "to impose reasonable limits on such cross-examinations based upon concerns

about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 474 U.S. 673, 679 (1986); see also Alford v. U.S., 282 U.S. 687, 694 (1931)(recognizing that the scope of cross-examination regarding a particular line of inquiry is "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate].").

Here, Petitioner has failed to demonstrate how the State court's decision violated federal law. The jury was told that the allegations of abuse concerning T.L. surfaced after T.L.'s mother received a telephone call from Petitioner's ex-wife. T.L.'s mother testified that she had never previously met or spoken with Petitioner's ex-wife. It is unclear how T.L.'s mother would have been competent to testify to Petitioner's ex-wife's alleged bias. Defense counsel was permitted to establish that Petitioner and his ex-wife had a hostile relationship by impeaching the Petitioner's daughter, Cara. Defense counsel chose not to do so. Appx. H at 236-37. Further, Petitioner was permitted to testify about his strained relationship with his wife, and did do so. Id. at 291. Petitioner's ex-wife did not testify at trial. Thus, the Court finds that defense counsel was adequately permitted to engage in cross-examination of the State's witnesses to demonstrate whether

they had bias.  See, e.g., Davis v. Alaska, 415 U.S. 308, 318 (1974); Brookhart v. Janis, 384 U.S. 1, 4 (1966).

Thus, Petitioner has not shown that the State court's rejection of this claim was contrary to, or an unreasonable application of clearly established Federal law, or an unreasonable application of the facts.  Accordingly, the Court denies Petitioner relief on Ground Three.

**E.   Ground Four**

In Ground Four, Petitioner alleges that his U.S. Constitutional rights to due process, a fair trial, and equal protection of law were denied when the trial court denied Petitioner's motion for a new trial and for arrest of judgment because evidence of collateral crimes outside the court's jurisdiction was introduced and there is a reasonable probability the jury found Petitioner guilty on the basis of committing those crimes.  Petition at 8.  In support, Petitioner asserts that evidence was introduced that Petitioner committed crimes against the child victim outside the territorial jurisdiction of the trial court.  Id.  Petitioner submits that "the State cannot meet the burden of proving beyond a reasonable doubt" that jury did not convict Petitioner on allegations that he molested the victim while on out-of-town trips.  Id. at 12.

Respondent contends that Ground Four is unexhausted and procedurally barred because Petitioner raised this Ground in terms

of State law only.  Response at 30.  Further, Respondent asserts that motions for a new trial and an arrest of judgment concern issues of State law only and are governed by Florida's rules of criminal procedure.  <u>Id.</u> at 31.  Further, Respondent argues that Petitioner fails to articulate a substantive argument that the State court violated any federal law in his Petition.  <u>Id.</u> at 30

Petitioner, in reply, submits that he "fairly presented" his claim to the State court because "he alleged a factual pattern" consistent with "federal Constitutional litigation."  Reply at 17.

**(1) Failure to Exhaust in State Court:**

Upon review, the Court finds that Petitioner did not raise Ground Four in terms of a federal violation on direct appeal. Neither Petitioner's direct appeal brief, nor the State's response brief cite to or reference any federal caselaw or a statute.  <u>See generally</u> Appx. B and D, Exhs. 5 and 1, respectively.  Indeed, both parties argued this issue solely on Florida procedural grounds and the Florida Supreme Court's opinion in <u>State v. Lee</u>, 531 So. 2d 133 (Fla. 1988).  <u>Id.</u>  Thus, Petitioner did not fairly present Ground Four to the State court.  <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004)(recognizing that there are a variety of ways a petitioner can alert the state court to the presence of a federal claim: by citing the federal source of law, by citing a case that decides the claim on federal grounds, or by labeling the claim "federal").

Further, Petitioner has not shown the required cause and prejudice, or a violation of fundamental fairness, to excuse the procedural default.  Consequently, the Court finds Ground Four is unexhausted and procedurally barred.

**(2) No Violation of Federal Law:**

In the alternative, the State court's adjudications of the claim are entitled to deference because the post-conviction court denied the motions for a new trial and arrest of judgment on the merits and the appellate court affirmed Petitioner's conviction and sentence.  Further, the record refutes Petitioner's assertions. The trial court denied the William's Rule evidence and did not permit into evidence the collateral crimes evidence requested by the State.  Instead, the child-victim testified that Petitioner "played with his penis" during a trip to Pinehurst, North Carolina.[12]  The child-victim denied recollection of other acts

_____

[12]On direct the T.L. testified as follows:
Q:   Now, when your were in Pinehurst, did something inappropriate happen in Pinehurst?"
A:   Yes.
Q:   What happened in Pinehurst?
A:   He played with his penis.

Appx. G at 183.

On cross-examination, defense stated:
Q:   On the trip to Pinehurst, now you're claiming that he touched your penis on that trip; correct?
A:   Yeah.
Q:   Sorry?
A:   Yes.

(continued...)

occurring while he was traveling with Petitioner to Palm Beach, Orlando, or St. Augustine.  This testimony was elicited from the child-victim, both on direct and during cross-examination.  As noted by the State, evidence that the Petitioner took the child-victim on numerous vacations alone "was inextricably intertwined with Petitioner's prevasive, systematic abuse of the victim over a period of years.  Introduction of the abuse that occurred while Petitioner and the victim were alone on trips together was relevant and admissible to show the context in which Petitioner won the victim's trust in order to violate that trust, and the victim." Response at 34.

Further, the fact that the jury found Petitioner guilty of the lesser offenses in Counts I and III, and guilty as charged in Count II is not significant.  In pertinent part the jury was charged on Count II as follows:

    LEWD, LASCIVIOUS, INDECENT ASSAULT OR ACT UPON A CHILD
                   SEXUAL BATTERY - F.S. 800.04

    Before you can find the defendant guilty of Lewd Assault,
    the State must prove the following two elements beyond a
    reasonable doubt:

    1. T.L. was under the age of sixteen years.

    2. Richard Kuhns made an assault upon T.L. in a lewd,
    lascivious or indecent manner.

    OR

---

[12](...continued)
Id. at 197.

> Richard Kuhns handled or fondled T.L. in a lewd, lascivious or indecent manner.
>
> Neither the victim's lack of chastity nor the victim's consent is a defense to the crime charged. As used in regard to this offense the words "lewd," "lascivious" and "indecent" mean the same thing. They mean a wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing an act.
>
> An "assault" is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

Appx. A, Exh. 1 at 60.

The federal courts have held, "[t]he rendering of inconsistent verdicts has always been an exclusive privilege and prerogative of the jury, and it is not our duty to unravel the ratiocinations of the jury's collective logic." Odom v. U.S., 377 F.2d 853, 857 (5th Cir. 1967)(citing, *inter alia*, U.S. v. Dotterweich, 320 U.S. 277 (1943) and Dunn V. U.S., 284 U.S. 390 (1931)). Here, based upon the record, there was ample evidence to support the jury's verdict on Count II. T.L. testified that, other than the incident at Pinehurst, the numerous acts of sexual abuse took place in the Petitioner's home, located in Golden Gate Estates, Collier County, Florida, over a two-year period. Appx. G at 206-217. Additionally, the Petitioner's daughter Cara testified that her father played the "blanket monster" game with T.L. in his bedroom at his home and she heard T.L. say "Rick stop touching my wiener." Appx. H at 235.

Upon a thorough review of the record, the Court finds that the State court's adjudications of this claim did not involve an unreasonable application of federal law, were not contrary to federal law, and were not based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Consequently, in the alternative, the Court denies Ground Four on the merits.

**F.   Ground Five**

Petitioner raises an ineffective assistance of trial counsel as Ground Five in his Petition.  Petition at 13.  Petitioner asserts that he was denied his right to effective assistance of counsel under the U.S. Constitution when his trial counsel failed to properly object to the child hearsay testimony from the victim's mother and the CPT member.  Id.  Petitioner alleges that he was prejudiced as a result of the hearsay testimony because the testimony corroborated the child-victim's testimony.   Id.  Petitioner states that he submitted this claim to the State court in his Rule 3.850 motion.  Id. at 14.

**(1) Failure to Exhaust in State Court:**

Based upon the record, the Court finds that Petitioner fairly presented Ground Five to the State court in terms of a violation of federal law.  Petitioner's Rule 3.850 motion explicitly states that "that he was denied constitutionally effective assistance of counsel at trial as guaranteed by Amendments VI and XIV, United

States Constitution . . . as defined in <u>Strickland v. Washington</u>, 466 U.S. 688 (1984) . . . ." Appx. B, Exh. 1 at 5-6. Consequently, the Court deems Ground Five exhausted and will address the merits of this claim.

**(2) No Violation of Federal Law:**

Respondent submits that Petitioner has not, and can not, sustain his burden under § 2254 by showing the State court's decision denying Petitioner's ineffective assistance of counsel claim was "contrary to" or involved an unreasonable application of the Supreme Court's clearly established precedent. Response at 38-39. After an evidentiary hearing, the post-conviction court denied Petitioner relief on his claim as follows:

> Having conducted an evidentiary hearing, and upon due consideration, the Court finds as follows:
>
> 1. An evidentiary hearing was held on January 30, 2006, at which time, Defendant was present and represented by Baya Harrison, III Esquire. The State called Defendant's trial counsel, Lee Hollander, Esquire as a witness. No other witnesses were called. At the hearing, Defendant withdrew his claim on Ground 2 and the Court consequently declared Ground 4 moot. Thus, the only ground before the Court at the evidentiary hearing was Ground 1.
>
> 2. Defendant alleges "trial counsel was ineffective for failing to properly object to the sufficiency of the evidence used by the trial court in its determination of the reliability of the child hearsay statements that were admitted at the trial." Defendant's claim can be divided into two parts: the child hearsay testimony of the child's mother and that of the Child Protection Team member, Dale Lively. In addition to Lively's testimony regarding the child's statement, a videotape of Lively's interview with the child was admitted into evidence.
>
> 3. As pertains to the testimony of Dale Lively and the videotape, Trial Counsel, Lee Hollander, testified at the

hearing that he specifically did not seek to have this evidence excluded because he wanted to use it to impeach the child's testimony. Attorney Hollander asserted that this was a part of his trial strategy.

4.   With regards to issues of trial strategy, the court gives deference to the strategic decisions of trial counsel, even if they are unsuccessful, and generally such decisions do not constitute ineffective assistance of counsel. (Citation omitted).  More specifically, "[s]trategic decisions do not constitute ineffective assistance if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." (Citation omitted). Defendant has the burden of proving that trial counsel's approach "would have been used by no professionally competent counsel." (Citation omitted). "Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions." (Citation omitted).  Defendant has failed to establish that no professionally competent counsel would have allowed the testimony of Lively and the videotape into evidence for impeachment purposes.

5.   As pertains to the child hearsay testimony of the child's mother, Defendant argues that trial counsel's failure to properly object to the sufficiency of the evidence used by the Court in determining the trustworthiness of the hearsay constituted reversible error.  That is, had Hollander objected under the child hearsay exception set out in Fla. Stat. § 90.803(23) rather than the "prejudice outweighs probative value" objection he raised, the Court would have had no alternative but to exclude the hearsay testimony.  While the trial court made findings using the language of the statute, the trial court did not recite the facts underlying such findings.  A copy of the relevant portions of the transcript is attached hereto. Defendant relies on this and Hopkins v. State, 632 So. 2d 1372 (Fla. 1994), to assert that trial counsel was ineffective.  Hopkins holds that a Court must articulate the specific grounds it used in making its determinations. "Mere recitation of boilerplate language of the statute. . . is not sufficient." Id. at 1377.

6. According to Strickland v. Washington a claim of ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was

deficient and, second, that the deficient performance prejudiced the defense. 466 U.S. 668 (1984). Furthermore, with "regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. A defendant bears the burden of establishing both prongs of the <u>Strickland</u> test before a criminal conviction will be vacated. (Citation omitted).

7. While Defendant asserts that the trial court would have to exclude the child hearsay testimony had trial counsel made the proper objection, Defendant has failed to establish this. Defendant has failed to present any evidence to establish that the insufficiency of the trial court's findings absolutely precluded it from making the necessary factual findings. Defendant failed to prove that the trial court could not have made these findings, even if trial counsel had properly objected to the admission of the child hearsay. He thus fails to prove that the improper objection prejudiced him in any way.

Appx. B, Exh. 4.

Applying the deferential standard of review, the Court finds that Petitioner has not demonstrated that the State court's decision in denying Petitioner's ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, the Supreme Court's clearly established precedent. First, the State court correctly identified <u>Strickland</u> as the controlling law that governed Petitioner's claim. Second, based upon a review of the record, the State court did not unreasonably apply <u>Strickland</u>. Defense counsel testified that he intentionally did not seek to exclude the child hearsay to the CPT worker because, as a matter of strategy, he wanted to use the testimony to show inconsistencies with the child's statements. Notably, Petitioner was found not

guilty of the most serious charge, the sexual battery charge in Count I.  Indeed, Petitioner was found guilty of two of the lesser charges, Counts I and III.

Further, counsel filed a pretrial motion seeking to exclude the child hearsay to the mother in response to the State's notice seeking to introduce the child hearsay.  The trial court, after conducting a hearing, ruled that the testimony was admissible under Fla. Stat. § 90.803(23).  Petitioner has not shown that the trial court would have ruled differently had defense counsel sought to exclude the child hearsay under different grounds; and, thus cannot establish prejudice.  Thus, the Court denies Ground Five on the merits.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Petition for Writ of habeas Corpus (Doc. #1) is **DISMISSED IN PART AND DENIED IN PART.**  Grounds 1, 2 and 4 are dismissed as procedurally barred, or for failing to raise a federal issue for which habeas relief lies.  In the alternative, Petitioner is denied relief on the merits on Grounds 1, 2 and 4. Additionally, Grounds 3 and 5 are denied on the merits.

2.   The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking to appeal a district court's final order denying his petition writ of habeas has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Harbison v. Bell, ___ U.S. ___, 129 S. Ct. 1481, 1485 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __21st__ day of March, 2011.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record